```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
       -v-                                                         :
                                                                   :
HUBERT DUPIGNY,                                                    :
   a/k/a "Fox";                                                    :
HENSLEY DUPIGNY,                                                   :   S1 18-CR-528 (JMF)
   a/k/a "Dizzy";                                                  :
CHRISTOPHER BULLOCK,                                               :   MEMORANDUM OPINION
   a/k/a "Cash";                                                   :       AND ORDER
DARIEL BRAHAM,                                                     :
   a/k/a "Panama,                                                  :
   a/k/a "Cobra"; and                                              :
ADRIENNE ROBERTS                                                   :
   a/k/a "Dee,"                                                    :
   a/k/a "Mama D,"                                                 :
                                                                   :
                     Defendants.                                   :
                                                                   :
-------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Defendants Hubert Dupigny, Hensley Dupigny, Christopher Bullock, Dariel Braham, and Adrienne Roberts are charged together with conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). Hubert Dupigny and Hensley Dupigny, who are brothers, are charged as well with one or more substantive counts of sex trafficking, in violation of 18 U.S.C. § § 1591(a), (b). Now pending are motions filed by four of the five Defendants seeking various forms of pretrial relief, ranging from disclosure of certain evidence to severance, suppression, and dismissal.[1] For the reasons stated below, the motions are all denied.

---

[1] Hensley Dupigny filed separate motions, which the Court previously resolved, *see* Docket Nos. 60, 114, and 116, and are not addressed further here.

**A. Motions to Sever**

First, three of the Defendants — Bullock, Braham, and Roberts (the "Non-Dupigny Defendants") — move for a severance from Hubert Dupigny and Hensley Dupigny. *See* Docket Nos. 93 ("Bullock Mem."), 94, 97 ("Braham Mem."). They argue that the Dupigny brothers were the "leaders" of the alleged conspiracy and, as a result, that the Government will introduce much more evidence relating to the Dupignys' conduct than evidence relating to their conduct. On top of that, because the Dupigny brothers are alleged to have committed substantive sex trafficking offenses, unlike the other three Defendants, the jury will hear evidence of more serious and culpable conduct by the Dupignys alone. They also claim that Hubert Dupigny's disruptive behavior in the courtroom, if continued at trial, will prejudice them. *See* Bullock Mem. 22-24. And finally, Braham seeks a severance on the ground that he intends to offer a defense at trial that is "antagonistic" to Hubert Dupigny's. Braham Mem. 4-8.

Exercising its "virtually unreviewable" discretion to grant or deny a severance, the Court concludes that these arguments do not call for a severance. *See United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (internal quotation marks omitted). "'There is a preference in the federal system for joint trials of defendants who are indicted together.' This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *Id.* (citations omitted) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). Indeed, severance is required only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Here, trying the Defendants together would neither compromise their trial rights nor prevent the jury from making a fair assessment of guilt as to each defendant. First, "[d]iffering levels of culpability

2

and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks and brackets omitted). Second, given that the Non-Dupigny Defendants are charged with conspiring to commit sex trafficking with the Dupignys, much if not all of the evidence relating to the Dupignys' alleged sex trafficking conduct would be admissible in a trial of the Non-Dupigny Defendants alone; to the extent it would not be, any prejudice can be mitigated — if not cured — by instructions directing the jury to consider the evidence against each Defendant separately. *See id.*; *Zafiro*, 506 U.S. at 539; *United States v. Rittweger*, 524 F.3d 171, 179-80 (2d Cir. 2008) (Sotomayor, J.). Relatedly, curative instructions and other courtroom management tools are more appropriate means to address any disruptive behavior by another Defendant at trial. *See, e.g.*, *United States v. Marshall*, 458 F.2d 446, 452 (2d Cir. 1972) (finding no abuse of discretion in the denial of a severance motion where the trial court "took great pains to repeatedly and carefully instruct the jury to disregard" one defendant's "obstreperous, disruptive trial conduct"). Finally, there is no basis to Braham's request for a severance on the ground that his defense may bolster the Government's case against Hubert Dupigny, *see United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017), if only because that possibility will not cause *Braham* to suffer any prejudice.

Accordingly, the Non-Dupigny Defendants' severance motions are DENIED.

**B. Hubert Dupigny's Motion for a Bill of Particulars**

Next, Hubert Dupigny moves for a bill of particulars, arguing that the Superseding Indictment, discovery materials, and other evidence proffered by the Government are so scanty that, without a bill of particulars, he "will proceed to trial without sufficient notice of precisely what conduct he is alleged to have committed to make him guilty of the charged crimes" and

3

without time to locate witnesses or perform a meaningful investigation. *See* Docket No. 78 ("Dupigny Mem."), at 7. Specifically, Dupigny seeks the identities of three victims in the case; the means of force, fraud, or coercion he is alleged to have used to induce these victims to engage in commercial sex; and how the Government will prove the victims' ages and Dupigny's knowledge or awareness of their ages. *Id.* at 8-9.

This motion fails for two independent reasons. First, Dupigny failed to comply with Local Criminal Rule 16.1, which provides that "[n]o motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." S.D.N.Y. and E.D.N.Y. Local Criminal Rule 16.1. By itself, that failure is fatal to the motion. *See, e.g.*, *United States v. Goode*, No. 16-CR-529 (NSR), 2018 WL 919928, at *15 (S.D.N.Y. Feb. 15, 2018); *United States v. Mahabub*, No. 13-CR-908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014).

Second, even if the motion were not procedurally barred, the Court would deny it on the merits. The Government need not preview its case or legal theory or "particularize all of its evidence" against a defendant. *See United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *accord, e.g.*, *United States v. Perryman*, 881 F. Supp. 2d 427, 430-31 (E.D.N.Y. 2012). It follows that Dupigny need not be informed of the specific means of coercion he is alleged to have employed against the still-unidentified victims in the Superseding Indictment. And between the indictment, applications for search warrants, court filings, and proffers during bail hearings, the Government has advised Dupigny of the nature and timeframe of the conspiracy;

the number of victims involved in the substantive trafficking offenses, the ages of several of the victims, and the residence from which he recruited them; and the types of physical force and coercion he has employed against at least some of them.  *See* Docket No. 102 ("Gov't Opp'n"), at 17-18.  Taken together, that information sufficiently apprises Dupigny of the nature and details of the charges against him that a bill of particulars is not warranted.  *See, e.g.*, *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

## C.  Bullock's Motion to Suppress Cellphone Evidence

Next, Bullock moves to suppress (1) historical cell-site location information obtained by the Government pursuant to a search warrant, (2) two cellphones that were seized at the time of his arrest, and (3) data obtained from the two cellphones pursuant to another search warrant.  *See* Bullock Mem. 5-15.  According to Bullock, the Government lacked probable cause for the two search warrants, and it was improper to seize the cellphones during his arrest without a warrant because it would not have been immediately apparent that the cellphones were connected with criminal activity (thereby justifying their seizure pursuant to the "plain view" exception to the warrant requirement).  *See United States v. Andino*, 768 F.3d 94, 99-100 (2d Cir. 2014).

Bullock's motion, however, founders on a threshold issue: He fails to establish that he has standing to challenge the searches and seizures at issue.  "Fourth Amendment rights are personal rights that may not be asserted vicariously."  *Rakas v. Illinois*, 439 U.S. 128, 133 (1978).  In order to challenge a search or seizure, therefore, a defendant "bears the burden of proving . . . that he had a legitimate expectation of privacy" in the things searched or seized.  *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (internal quotation marks omitted).  More specifically, "a defendant must submit an affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest" in the

property searched or seized. *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995); *accord, e.g.*, *United States v. Pizarro*, No. 17-CR-151 (AJN), 2018 WL 1737236, at *7 (S.D.N.Y. Apr. 10, 2018) (finding that the defendant lacked standing to challenge a search of cell-site location information in part because he did not file an affidavit); *United States v. White*, No. 17-CR-611 (RWS), 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018).

In this case, Bullock himself did not submit an affidavit. His attorney did submit an affidavit, but it is inadequate because it is not based on personal knowledge. *See, e.g.*, *White*, 2018 WL 4103490, at *8. And while it may be true that the Government intends to link Bullock to the cellphones and subscriber numbers at trial, and that Bullock's girlfriend told law enforcement officers that the cellphones were "likely" his, those facts are not determinative in the standing analysis. *See Watson*, 404 F.3d at 166; *White*, 2018 WL 4103490, at *8 ("This Circuit has routinely rejected efforts by defendants to establish Fourth Amendment standing based on the Government's allegations or evidence."); *Pizarro*, 2018 WL 1737236, at *7 ("The anticipated argument by the Government at trial that some of the phone numbers belonged to the Defendants does not lend them standing."). Put simply, the burden is on Bullock to establish his Fourth Amendment interests in the items searched and seized, and he has failed to carry that burden. His motion is therefore denied.

Bullock's motion to suppress the cell-site location information and the data from the two cellphones also fails on the merits. Assuming for the sake of argument that the search warrants at issue failed to establish probable case (a questionable assumption in its own right), the good-faith exception for searches executed pursuant to a warrant would foreclose suppression of the fruits of the two searches here. *See United States v. Leon*, 468 U.S. 897, 919-21 (1984); *United*

6

*States v. Raymonda*, 780 F.3d 105, 117-18 (2d Cir. 2015). Under *Leon*, "evidence obtained by officers in objectively reasonable reliance on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion." *Raymonda*, 780 F.3d at 118 (internal quotation marks omitted). In this case, Bullock contends that the good-faith exception is unavailable because the "issuing magistrate" was "knowingly misled" by the officers submitting the warrant application. *See id.* (internal quotation marks omitted); *see also* Bullock Mem. 8-9, 14-15 (arguing that the search warrant applications contained "false and misleading statements"). But that is not the case. Substantially for the reasons stated in the Government's opposition, *see* Gov't Opp'n 30-31, the Court finds that there is no evidence that the affidavits in support of the two warrants were knowingly false or misleading, *see Raymonda*, 780 F.3d at 119-20. Accordingly, the good-faith exception applies.² For that reason, and because Bullock lacks standing to challenge these searches and seizures, Bullock's motion is denied.

### D. Motions for Disclosure

Next, several Defendants move for disclosure of evidence under a variety of theories. To the extent that these motions seek evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, they are denied on the basis of the Government's good faith representation that it has complied with its obligations and will continue to do so. *See* Gov't Opp'n 19; *see, e.g.*, *United States v. Davis*, No. 17-CR-610 (LGS), 2018 WL 4373998, at *10 (S.D.N.Y. Sept. 13,

---

² As the Court noted in an oral ruling denying Hensley Dupigny's motion to suppress evidence obtained from a search of a cellphone, *see* Docket Nos. 114 and 116, there is arguably a staleness problem with respect to the probable showing in the search warrant applications in this case, *see Raymonda*, 780 F.3d at 114. Bullock makes no suppression argument on this basis, however, and such an argument would likely fail in any event for substantially the reasons stated by the Court earlier: Because there is "no bright-line rule for staleness," *id.* at 114 (internal quotation marks omitted), the search warrants here were not "so lacking in indicia of probable cause" that a law enforcement officer could not have reasonably relied upon them, *see id.* at 118 (internal quotation marks omitted).

7

2018); *see also United States v. Mangano*, No. 16-CR-540, 2018 WL 851860, at *17 (E.D.N.Y. Feb. 9, 2018) ("Courts in the Second Circuit generally do not compel immediate disclosure of *Brady*/*Giglio* materials where (1) the Government represents it is aware of and will comply with its *Brady*/*Giglio* obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply." (internal quotation marks omitted)). To the extent that these motions seek early disclosure or preclusion of evidence of other crimes or bad acts, the motions are denied as premature. *See* Fed. R. Evid. 404(b) (requiring only "reasonable notice" of the use of such evidence); *United States v. Ahmed*, 94 F. Supp. 3d 394, 439 (E.D.N.Y. 2015) (noting that "preemptive requests for such disclosures are routinely denied as premature"). And finally, to the extent these motions seek early disclosure of the Government's trial materials, including the statements of witnesses and victims, the motions are denied as frivolous. The "Jencks Act *prohibits* a District Court from ordering the pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (emphasis added); *see also* 18 U.S.C. § 3500.

### E. Hubert Dupigny's Motion to Dismiss

Finally, Hubert Dupigny moves to dismiss Counts 1 through 4 of the Superseding Indictment for failure to adequately plead venue in this District. *See* Docket No. 78, at 3-4. "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013). Here, the Superseding Indictment alleges that Hubert Dupigny committed the offenses "within the Southern District of New York and elsewhere." Docket No. 50. That general allegation is sufficient to support venue at this stage, as innumerable courts in this District have held. *See, e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016); *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010). Dupigny's motion is

8

therefore denied without prejudice to renewal at the close of the Government's case. *See, e.g.*, *Ohle*, 678 F. Supp. 2d at 231-32.

## CONCLUSION

For the reasons stated above, Defendants' motions are all DENIED. All dates and deadlines — including the trial date of October 7, 2019, *see* Docket No. 80 — remain in effect. The Clerk of Court is directed to terminate Docket Nos. 78, 91, 94, and 99.

SO ORDERED.

Dated: May 30, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge